IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW NATHANIEL BINGHAM II, | : Civ. No. 3:23-CV-1357 |
| | : |
| | : |
| Plaintiff | : |
| | : |
| v. | : (Chief Magistrate Judge Bloom) |
| | : |
| SHAWN HARNER, et al., | : |
| | : |
| Defendants. | : |

MEMORANDUM OPINION

## I. Introduction

This case comes before us for consideration of a motion to dismiss, or in the alternative, for summary judgment filed by the defendants: Corrections Officers Shawn Harner, Bernard Wojciechowski, and Chris Gorki, Sergeant Justin Gibbons, and Lieutenant Davis. (Doc. 53). The plaintiff, Andrew Nathaniel Bingham II, is an inmate incarcerated in the Pennsylvania Department of Corrections ("DOC"), and formerly housed at the State Correctional Institution at Mahanoy ("SCI Mahanoy"). Bingham brings this action against the defendants pursuant to 42 U.S.C. § 1983 alleging claims of excessive force, cruel and unusual punishment, and failure to intervene in violation of the Eighth and Fourteenth

Amendments. (Doc. 52). These claims arise out of the officers' alleged use of force against Bingham after he was found flushing contraband down the toilet in his cell. (*Id.*).

Bingham filed a third amended complaint, which is currently the operative pleading. (Doc. 52). The defendants now move to dismiss Bingham's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, or in the alternative, move for summary judgment, arguing Bingham failed to properly exhaust available administrative remedies. (Doc. 53). In his opposition, Bingham withdrew his claims against Gibbons and Davis. (Doc. 59). As a result, only his claims against Harner, Wojciechowski, and Gorki for excessive force and cruel and unusual punishment remain.

The defendants attached evidence to their motion in support of their claim that Bingham failed to properly exhaust. (Doc. 54). Because the motion was filed in the alternative as a motion for summary judgment, Bingham was on notice that the court might convert the motion into a motion for summary judgment. Bingham, however, did not attach any additional evidence in his opposition brief. (Doc. 59). Since matters outside the pleadings were presented to the court, we will

consider the defendants' motion as a motion for summary judgment as to the issue of Bingham's failure to exhaust his administrative remedies. For the following reasons, we will grant the defendants' motion.

## II.  Background

The well-pleaded facts set forth in Bingham's third amended complaint allege that on August 26, 2021, while incarcerated at SCI Mahanoy, Bingham began flushing contraband down the toilet after hearing banging on his cell door, an indication officers would be searching his cell. (Doc. 52 ¶¶ 10-14). Harner entered Bingham's cell and ordered him to stop flushing the toilet. (*Id.* ¶¶ 15-17). After Bingham ignored the command and continued flushing, Bingham claims that Harner charged toward him, grabbed him by the neck, and squeezed such that Harner's hold constricted Bingham's airway and obstructed his breathing. (*Id.* ¶¶ 18-19). Bingham then stood up, breaking Harner's hold on his neck and causing Harner to stumble. (*Id.* ¶ 20). In response, Harner allegedly grabbed Bingham by the shoulders and slammed him into a footlocker at the rear of the cell. (*Id.* ¶ 22).

Bingham asserts Harner, Wojciechowski, and Gorki proceeded to surround and attack him. (Doc. 52 ¶ 24). Gibbons then entered the cell

and held the back of another corrections officer's shirt. (*Id.* ¶ 28). Bingham states Wojciechowski punched him in the side of the head with a closed fist, and he began to bleed from his nose and wound above his right eye. (*Id.* ¶ 29). After lifting Bingham out of the footlocker, Harner, Wojciechowski, Gorki, and Gibbons allegedly slammed Bingham onto the floor. (*Id.* ¶ 31). Gibbons subsequently retreated to the doorway of the cell, and Davis arrived at the doorway of the cell, leering in. (*Id.* ¶¶ 32-34). Bingham claims Gorki proceeded to shove his face into the floor, which caused his nose and throat to fill with blood, again obstructing his breathing. (*Id.* ¶ 35). Harner, Wojciechowski, and Gorki then rolled Bingham onto his side and handcuffed him. (*Id.* ¶¶ 37-38).

Bingham alleges that he suffered a concussion, closed fracture to the nose, scratches and contusions, swelling to the head and face, black eyes, difficulty breathing, and four loose teeth. (Doc. 52 ¶ 64). He also claims that he now has a 1.5-inch scar above his right eye, numbness in his right ear, a reduced ability to taste and smell, and suffers from PTSD and anxiety related to the attack. (*Id.* ¶¶ 65-66).

Between September 30, 2021, and December 16, 2021, Bingham spoke with and sent letters to the Bureau of Investigations and

Intelligence ("BII") and other prison officials regarding the incident. (Doc. 54-6 at 6). Bingham filed a grievance regarding the incident on December 26, 2021. (*Id.*). He claimed the delay in filing was because he "fear[ed] retaliation, vindictiveness, and for [his] health and safety." (*Id.*). The Facility Grievance Coordinator rejected his grievance because it was not submitted within 15 working days after the incident. (*Id.* at 5). His July 2022 appeal of the rejection was denied by the Facility Manager, who found the grievance was properly rejected since it was not submitted in a timely manner. (*Id.* at 3). His final appeal was dismissed in October 2022 because he did not provide a copy of the rejection notice with his appeal. (*Id.* at 2).

On August 16, 2023, Bingham filed a complaint against Harner, Wojciechowski, Gorki, Gibbons, Davis, the DOC, and SCI Mahanoy Superintendent Bernadette Mason. (Doc. 1). Bingham amended his complaint in May 2024 and October 2024. (Docs. 34, 44-1). Following the filing of the second amended complaint, the claims against the DOC and Mason were dismissed without prejudice. (Doc. 45).

Bingham then filed his third amended complaint in April 2025 against Harner, Wojciechowski, Gorki, Gibbons, and Davis, which is

currently the operative pleading. (Doc. 52). Bingham alleges excessive force, cruel and unusual punishment, and failure to intervene in violation of the Eighth and Fourteenth Amendments. (*Id.*). The defendants filed a motion to dismiss, or in the alternative, for summary judgment on the issue of whether Bingham properly exhausted his administrative remedies. (Doc. 53). In his opposition, Bingham withdrew his claims against Gibbons and Davis. (Doc. 59). As a result, only his excessive force and cruel and unusual punishment claims against Harner, Wojciechowski, and Gorki remain. The motion is fully briefed and ripe for resolution. (Docs. 54, 59, 63).

The defendants attached Bingham's grievance forms and appeals, the DOC's grievance policy, and Bingham's cell history to their motion to support their claim that Bingham failed to exhaust. (Doc. 54). Because the motion was filed in the alternative as a motion for summary judgment, Bingham was on notice that the court might convert the motion into a motion for summary judgment. Bingham, however, did not attach any additional evidence in his opposition brief. (Doc. 59). Since matters outside the pleadings were presented to the court, we will construe the defendants' motion as a motion for summary judgment.

After consideration, we conclude there is no genuine issue of material fact as to whether the grievance process was available to Bingham, and we will grant the defendants' motion for summary judgment.

## III.   Discussion

### A. Standard of Review

The defendant has filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, or in the alternative, for summary judgment pursuant to Rule 56 on the issue of whether Bingham properly exhausted administrative remedies. On a motion to dismiss, a court "may only consider an 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document,' but otherwise it should convert the motion to dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 12(d)." *Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 308 n.5 (3d Cir. 2023) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993)).  Merely citing an extrinsic document in the complaint is not sufficient for a plaintiff's claims to be 'based on' that document.  *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d

Cir. 1997).  Moreover, "[w]hile the failure to exhaust administrative remedies may form a basis for a dismissal for failure to state a claim, dismissal on that ground is appropriate only in those circumstances where the complaint reveals the exhaustion defense on its face." *Thomas v. Brinich*, 579 F. App'x 60, 62 (3d Cir. 2014).  As a general rule, if matters outside the pleadings are presented to the court and not excluded, a Rule 12(b)(6) motion must be treated as a summary judgment motion.  Fed. R. Civ. P. 12(d).

Here, the complaint does not reveal the exhaustion defense on its face; it indicates that Bingham filed a grievance regarding the incident but does not state when the grievance was filed nor convey that the grievance was rejected for being untimely.  (Doc. 52 ¶ 62).  But the defendants have attached Bingham's grievance paperwork to their motion, seeking summary judgment on the issue of exhaustion.

When a motion to dismiss is styled in the alternative as a motion for summary judgment, the nonmoving party has adequate notice that the court may convert the moving party's motion to dismiss into a motion for summary judgment.  *Razzoli v. Director, Bureau of Prisons*, 293 F. App'x 852, 855 (3d Cir. 2008).  As such, "the opposing party is under an

obligation to respond to that motion in a timely fashion and to place before the court all materials it wishes to have considered" even if the motion only moved for summary judgment in the alternative. *Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996) *overruled on other grounds Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000). Because the defendants have attached Bingham's grievance paperwork, the DOC's grievance policy, and Bingham's cell history for our consideration, we will consider the issue of exhaustion using the summary judgment standard.

Rule 56(a) provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of the facts will depend on the substantive law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under governing law" will preclude summary judgment. *Id.* A dispute is only genuine if a reasonable juror could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to "demonstrate the absence of a genuine issue of material fact," relying on pleadings, depositions, affidavits, and other evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant "successfully points to evidence of all of the facts needed to decide the case on the law," the nonmovant can still defeat summary judgment by pointing to evidence in the record which creates a genuine dispute of material fact and from which a jury could find in its favor. *El v. Southeastern Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). A court may not make credibility determinations or weigh the evidence, but "must view the facts in the light most favorable to the non-moving party." *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

**B. The Defendants' Motion for Summary Judgment will be Granted.**

In their motion, the defendants argue Bingham failed to properly exhaust his administrative remedies, and as such, his claims are barred. Bingham claims there is a factual dispute as to whether administrative

10

remedies were available to him such that he could properly exhaust them and requests an evidentiary hearing after discovery to resolve this alleged factual dispute. After consideration, we conclude that there is no genuine issue of material fact as to Bingham's failure to exhaust his administrative remedies. Accordingly, we will grant the defendants' motion for summary judgment.

### 1. The Administrative Exhaustion Requirement

Under the Prison Litigation Reform Act ("PLRA"), an inmate cannot bring a Section 1983 claim in federal court until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement applies to any claim arising in the prison setting, regardless of the relief sought by the prisoner. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Courts cannot "excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). The PLRA requires proper exhaustion, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including

deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

The DOC has established a grievance system for processing inmate complaints, DC-ADM 804. (*See* Doc. 54-7). That policy requires that grievances be submitted within 15 working days to the Facility Grievance Coordinator. (*Id.* § 1.A.8.). An inmate may appeal grievance decisions to the facility manager and may appeal the facility manager's decisions by submitting an Inmate Appeal to Final Review. (*Id.* §§ 2.A.1.a., 2.B.1.b.). The Third Circuit has held that DC-ADM 804's 15-day period in which to file grievances may be considered tolled where there is an "appropriate" reason to justify the delay, that an inmate may request a "time extension for filing a grievance" once the reason for delay has passed, and that a failure to do so means the remedy was not exhausted. *Talley v. Clark*, 111 F.4th 255, 264-65 (3d Cir. 2024). The *Talley* Court found the ability to request an extension existed within DC-ADM 804, at section 1.C.2.e. *Id.* at 265. Since that tool exists within DC-ADM 804, the Court reasoned proper exhaustion requires a prisoner who has been prevented from timely submitting grievances to use this process to attempt to extend their window to submit. *Id.* In short, "prisoners must pursue requests

12

for extensions of time to file grievances under [DOC] policies when impediments to filing grievances are removed." *Payne v. Gourley*, 2025 WL 924026, at *1 (M.D. Pa. Mar. 26, 2025) (citing *Id.* at 264-65).

"Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013). The failure-to-exhaust defense has two stages. *West v. Emig*, 787 F. App'x 812, 814 (3d Cir. 2019). "The first inquiry is whether the prison-employee defendants can demonstrate that the inmate failed to exhaust the on-the-books remedies." *Id.* (citing *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007)). "If the defendants can make that showing, then at the second stage, the inmate plaintiff bears the onus of producing evidence that the on-the-books remedies were in fact unavailable to him or her." *Id.* (citing *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018)).

There are three circumstances in which an administrative remedy is unavailable and thus considered exhausted: (1) when the remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use"; and (3)

"when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643-44 (2016). To defeat a failure-to-exhaust defense by alleging remedies were unavailable due to intimidation, "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." *Rinaldi*, 904 F.3d at 269.

"If there is no genuine dispute of material fact, then the exhaustion defense may be evaluated as a matter of law at summary judgment." *West*, 787 F. App'x at 814. But if there is a genuine dispute of material fact related to exhaustion, "summary judgment is inappropriate, and a court should provide adequate notice to the parties and hold an evidentiary hearing to resolve those factual disputes, or 'at least provide the parties with an opportunity to submit materials relevant to exhaustion,' before resolving those factual disputes." *Id.* (quoting *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018)).

## 2. <u>Bingham Failed to Exhaust his Administrative Remedies.</u>

Here, the incident that gave rise to Bingham's Section 1983 claim occurred on August 26, 2021. (Doc. 52 ¶ 10). Bingham thus was required to file a grievance within 15 working days, *i.e.*, by September 17, 2021. The record shows he did not file a grievance until December 26, 2021, well after the 15-day window. (Doc. 54-6 at 6). The defendants therefore have met their burden of demonstrating that Bingham failed to exhaust the on-the-books remedies. As such, for his suit to survive Bingham must produce evidence that the on-the-books remedies were unavailable to him. *See West*, 787 F. App'x at 814.

Bingham asserts that the ". . . grievances attached to Defendant's motion repeatedly indicate that Plaintiff's grievances were not responded to, he was not being provided the proper forms, and his ability to proceed was being hindered" such that "there is a factual dispute as to whether administrate (sic) remedies were 'available' to Plaintiff." (Doc. 59 at 7). In his grievance, Bingham claimed the delay in filing was because he "fear[ed] retaliation, vindictiveness, and for his health and safety." (Doc. 54-6 at 6). Other than these bare assertions, Bingham provides no evidence for his claim that he was prevented or intimidated from filing

15

his grievance on time.  As such, there is no genuine issue of material fact regarding Bingham's failure to exhaust his administrative remedies and summary judgment will be granted in favor of the defendants.

First, we address Bingham's contention that his grievances were not responded to.  (Doc. 59 at 7).  It is undisputed that prison officials responded to his official grievance, as Bingham received a rejection form a mere three days after his grievance was filed that acknowledged receipt of the grievance and explained that it was being rejected because it was untimely.  (Doc. 54-6 at 5).  Bingham also received responses to his appeals of the rejection of his grievance from the Facility Manager in August 2022 and the Chief Grievance Officer in October 2022.  (*Id.* at 2, 3).  Accordingly, as to Bingham's official grievance, there is no evidence that staff failed to respond to his grievance or appeals.

To the extent Bingham is referencing a lack of response to his letters sent to BII and other prison officials before he filed his grievance, his contention is unavailing.  At the outset, Bingham's first letter was sent on September 30, 2021, which was already after the September 17 deadline to timely file his grievance.  (Doc. 54-6 at 6).  Further, his letters are not official grievances within the DOC's requirements and thus any

non-response to these letters would not excuse his failure to file a timely grievance. *See e.g.*, *Hersey v. Lanigan*, 2012 WL 209430, at *4 (D.N.J Jan. 23, 2012) (citations omitted) (finding the plaintiff's argument regarding nonresponse to inmate requests "inapposite" to the plaintiff's exhaustion argument, as the "[p]laintiff was required to *properly* exhaust the available administrative remedies[.]") (emphasis in original). Thus, Bingham has failed to provide evidence to show that his grievances were not responded to, and therefore, that the process was unavailable to him.

Bingham's next claim is that he was not provided the proper forms. (Doc. 59 at 7). This argument appears to stem from Bingham's July 2022 appeal of his grievance denial. (Doc. 54-6 at 4). But this claim, mentioned in the context of the grievance appeals process at SCI Camp Hill after Bingham was transferred, fails to explain why he was unable to file a timely grievance at SCI Mahanoy in September of 2021. Thus, this argument has no bearing on whether the remedies at SCI Mahanoy were available to Bingham in September of 2021 such that proper, timely exhaustion of his administrative remedies would be excused. We reach a similar conclusion with respect to Bingham's contention that his ability

to proceed was being "hindered," which was raised only in the context of his grievance appeals in July of 2022 at SCI Camp Hill. (Doc. 54-6 at 4).

Finally, to the extent Bingham is arguing that his ability to proceed was being hindered because he "fear[ed] retaliation, vindictiveness, and for his health and safety" as alleged in his grievance, he again fails to show a genuine dispute of material fact. (Doc. 54-6 at 6). In fact, Bingham "has introduced no evidence demonstrating that he received any threat about filing a grievance." *Walters v. Harry*, 2024 WL 4351444, at *10 (M.D. Pa. Sept. 30, 2024). Nor does he "identify any statement or action by a staff member at SCI [Mahanoy] which would have deterred him from filing a grievance." *Id.* Instead, Bingham has "essentially asserted a generalized fear of retaliation, which is insufficient to render administrative remedies unavailable to him." *Id.* This generalized assertion of retaliation is also belied by the fact that Bingham filed inmate requests and attempted to speak to SCI Mahanoy staff about the incident in September, October, and November of 2021 prior to filing his belated grievance. (Doc. 54-6 at 6); *see Barger v. Walton*, 317 F. App'x 188, 190 (3d Cir. 2009) ("Barger's contention that he was too intimidated to file an administrative grievance conflicts with his submission of an

'Inmate Request Form' directly to the Warden . . .").  Here, Bingham asserted in his grievance that he attempted to speak to staff members, BII, and the Superintendent of the prison about the incident prior to filing his grievance.  (Doc. 54-6 at 6).  These actions were taken while he was still incarcerated at SCI Mahanoy and before he was transferred to SCI Camp Hill.  *See McKee v. Burns*, 2024 WL 3850448, at *6 (M.D. Pa. Aug. 16, 2024) (finding that the impediment to filing a grievance was removed once the plaintiff was transferred to a new facility). Accordingly, the evidence squarely rejects Bingham's generalized and belated claims of retaliation and intimidation.

Accordingly, we find there is no genuine issue of material fact as to Bingham's failure to exhaust his administrative remedies.  We therefore will grant the defendants' motion for summary judgment.[1]

## IV.  <u>Conclusion</u>

For the foregoing reasons, the defendants' motion for summary judgment (Doc. 53) will be GRANTED.

An appropriate order follows.

---

[1] Because we have determined that Bingham failed to properly exhaust his available administrative remedies, we decline to address the defendants' remaining arguments.

19

_s/ Daryl F. Bloom_
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: July 25, 2025